1. "It is an elementary rule of construction, as applied to a pleading, that it is to be construed most strongly against the pleader; and that if an inference unfavorable to the right of a party claiming a right under such a pleading may be fairly drawn from the facts stated therein, such inference will prevail in determining the rights of the parties." Krueger
v. MacDougald, 148 Ga. 429 (96 S.E. 867).
2. While the petition in the instant case refers to a loan, it alleges no promise on the part of the plaintiff to pay any sum, and when construed most strongly against the pleader, under the foregoing rule, it shows merely a sale of the property with an oral option to repurchase, the latter being in conflict with the deed and therefore unenforceable, and does not show a security deed with possession held by the grantor. The court did not err in sustaining the general demurrer and dismissing the petition.
Judgment affirmed. All the Justices concur.
 No. 14774. MARCH 8, 1944.
Mrs. J. S. McEntire brought an equitable petition in Whitfield superior court against E. P. Pangle and Mrs. Mary M. Carroll, and alleged as follows: Petitioner is the owner and in possession of described real estate in Whitfield County, Georgia. She had previously procured a loan from the Bank of Dalton, and secured the same by a deed containing a power of sale. This indebtedness, including *Page 415 
both principal and interest, aggregated the sum of $1227.15. In August, 1943, the bank declared the debt due, and advertised the property to be sold on September 7. On September 6, the day before the proposed sale, the defendant Pangle represented to petitioner and her husband that he was their friend, that he had idle money and would like to help petitioner save her home, and would give her ample time to redeem, and proposed to petitioner and her husband that he would pay off the bank's debt of $1227.15 and lend her an additional $100 in cash, making a total of $1327.15; and that he would give her the right to remain in full, complete, and undisturbed possession of the property and the right to redeem it if the debt was paid on or before November 6, 1943, "which proposal was contingent only that she convey title to the property to him." At the same time Pangle represented that he could sell the property for considerably more than $1327.15, and that if she should decide she could not redeem it before November 6, 1943, he would sell it to the best advantage and pay her one-half the amount realized above that price, with interest. Petitioner relied on Pangle as a friend, reposed confidence in him, and accepted his proposal to convey to him the title, which was to be defeasible and conditional to the extent that she was to be given the right to redeem the property, and have the same reconveyed to her upon her repaying Pangle the sum of $1327.15 with interest. After accepting Pangle's proposal, and on the same day, September 6, 1943, one Whitener, a notary public and justice of the peace, and petitioner's husband came hurriedly to her home, Whitener telling her that they came out there in a taxi which was waiting for them, and that they brought the instrument for her to sign. Whitener said that the paper was the agreement made by petitioner with Pangle, and that it was not necessary for her to read it. She alleged that she was unable to read without her glasses, and had no opportunity under the circumstances to find them, and besides, was relying on the paper containing the true contract she had made with Pangle. The paper that she signed was an absolute deed, reciting the consideration of $1327.15, and conveying a fee-simple title to Pangle. Two days after she executed this deed, it was recorded, and Pangle immediately began to advertise the property for sale over the radio, and immediately gave a named person an option to buy. Petitioner was molested by prospective *Page 416 
purchasers coming out to see her, and to inspect the property, and make inquiry. Among these prospective purchasers was the defendant, Mrs. Carroll, who, several days before she purchased from Pangle, asked petitioner if she was going to sell; and petitioner informed her that she had no desire to sell but intended to keep the place for her home. On September 24, 1943, Mrs. Carroll undertook to purchase the property from Pangle. On that date he executed and delivered to her an instrument purporting to convey a fee-simple title, for the consideration of $2150, and on the same day Mrs. Carroll executed back to Pangle a deed to secure debt, which was immediately recorded. On October 9, 1943, petitioner's attorney and her husband went to see Pangle and offered on the part of petitioner to pay off and discharge the indebtedness to Pangle, but the latter replied that he could not take the money, that the property was then out of his hands.
By amendment, petitioner alleged that she never at any time told Pangle she would not be able to raise the money and redeem the property; that she never authorized anyone to do so for her; that she never at any time authorized him to sell the property; that "the only way she has to raise the money necessary to pay said indebtedness to defendant Pangle is by borrowing the same and securing such borrowed money by deed to secure debt on her aforesaid property; but that she was then prepared on October 9, 1943, and is still in position to procure said money and pay said indebtedness by giving a loan deed with first lien to her aforesaid property. For the reason stated she has not tendered said money into court. The conduct of defendants in violating the terms of her true contract with defendant Pangle has made it impossible for her to tender said money into court." She alleged bad faith on the part of Pangle, and that he fraudulently procured from her an absolute fee-simple conveyance of title, containing no recitals of conditions or defeasance, after he had falsely and fraudulently represented himself as her friend, who was trying to help her save her property, and whose proposal she accepted in good faith; but that he immediately violated his proposal. She offered to confess judgment against herself and against the property for the sum of $1327.15 with interest, in favor of Pangle, and asked that this be accepted in lieu of a continuing tender in view of all the circumstances alleged, and the fact that tender was made and refused on *Page 417 
October 9, 1943. She alleged that it would be necessary to encumber the property for the purpose of raising the money; and that it would take several days to consummate a loan, and asked a few days time thereon before denying her the right of redemption.
The prayers were: For process; that the true contract between petitioner and Pangle be set up and established by decree of the court; that petitioner's deed to Pangle be reformed so as to embody all the terms of the true contract; that Pangle be required to reconvey the property to petitioner upon the payment to him of the sum of $1327.15, with interest; that the deed from Pangle to Mrs. Carroll, and the latter's reconveyance to Pangle to secure debt be annulled as clouds on petitioner's title and right of possession; that both defendants be enjoined from changing the status of the title in any manner, and enjoined from interfering with petitioner's ownership and right of possession; and for such other and further relief as to the court might seem proper.
The defendant demurred generally to the petition as amended, and the plaintiff excepted to the judgment sustaining the demurrer.